# EXHIBIT 4

## Plaintiff's Opposition to Motion to Stay All Claims

ELECTRONICALLY FILED
2026 May 22 PM 4:49
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2026-CV-001216
PII COMPLIANT

STINSON LLP
1625 N. Waterfront Pkwy, Suite 300
Wichita, Kansas 67206-6620
(316) 265-8800
Fax: (316) 265-1349

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT, SEDGWICK COUNTY, KANSAS**
**CIVIL DEPARTMENT**

| | |
|---|---|
| RIVER WALK BEST LIVING LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>YSA INVESTMENTS I, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: SG-2026-CV-1216 |

Pursuant to K.S.A. Chapter 60

**<u>PLAINTIFF'S OPPOSITION TO MOTION TO STAY ALL CLAIMS</u>**

The Court should deny defendant YSA Investments I, LLC's ("YSA") motion to stay this case pending resolution of Marc Kulick's Delaware action against YSA. A stay is an extraordinary remedy, and YSA—as the movant—bears the burden of proving it necessary. YSA has not come close to meeting that burden. Its motion omits critical facts, addresses only one of the three factors governing stay requests, and ignores the severe and potentially irreparable harm a stay would inflict on River Walk Best Living LLC ("River Walk"). Specifically:

- Judicial efficiency can be attained without a stay of this case.
- YSA will not be prejudiced if its motion is denied.
- A stay of this case will likely cause plaintiff River Walk critical, and perhaps irreparable, harm.

Because YSA has failed to carry its burden on any of the three governing factors, and because a stay threatens River Walk with irreparable financial harm, YSA's motion should be denied.

**THE CRITICAL FACTS YSA DID NOT DISCLOSE**

Proceedings on the complaint in the Delaware Action, *Kulick et al. v. YSA Investments 1, LLC et al.,* Del. Ch. No. 2025-1319-KSJM, have been speedy. The plaintiffs filed their complaint for declaratory and injunctive relief in November 2025. Request for Judicial Notice ("RJN"), Ex. 1 (Docket, # 1). On March 5, 2026, the Chancery court held a trial on the plaintiffs' motion for a preliminary and permanent injunction. RJN, Ex. 1 (Docket, # 184). After submission of post-trial briefs and oral argument, the Chancery court took the matter under advisement on April 9, 2026. RJN, Ex. 1 (Docket, ## 186, 192, 197, 200).

River Walk was not and still is not a participant in the Delaware Action. While YSA filed an amended answer and third-party complaint on February 11, 2026 (RJN, Ex. 1 (Docket, # 166)) naming both River Walk and River Walk Sponsor, LLC (River Walk's former manager) as third-party defendants, YSA has yet to serve River Walk or any of the other third-party defendants. On May 8, 2026[1]—a full 86 days after filing its third-party complaint—YSA took its first step toward prosecuting that complaint, sending a letter to the Register in Chancery requesting preparation and service of a summons. RJN, Ex. 2. YSA's dilatory approach to its own third-party claims stands in stark contrast to its demand that this Court stay River Walk's case in deference to a proceeding in which River Walk has no voice and no obligation to participate.

Meanwhile, as alleged in River Walk's petition, its "$27 million loan from Wells Fargo Bank, N.A., which is secured by a first mortgage on the Property, is falling due in the near future.

[1] For reference, River Walk filed the Petition in this action on April 2, 2026.

To renegotiate that loan or obtain a new take-out loan from another lender, River Walk must hold title to the Property clear of other encumbrances. If left on record, the YSA Mortgage will impede and likely prevent River Walk from renegotiating or replacing its loan from Wells Fargo Bank, N.A." Petition, ¶ 14; *see also* Declaration of Stephen M. Wright ("Wright Decl."), ¶ 3.

**THE COURT SHOULD DENY THE REQUESTED STAY**

**A. The Court Must Weigh Relative Harm To Parties As Well As Judicial Efficiency**

"[A] stay in a civil case is an extraordinary remedy." *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 367, 22 P.3d 124, 136 (2001) (citation omitted). "The party seeking the stay bears the burden of proof to establish that the stay is necessary." *Id.,* 271 Kan. at 368, 22 P.3d at 137 (citation omitted); *see also Harsch v. Miller*, 288 Kan. 280, 293, 200 P.3d 467, 476 (2009).

"[T]he question of staying an action is largely discretionary with the court and is governed by the same law applicable to continuances." *Henry v. Stewart*, 203 Kan. 289, 293, 454 P.2d 7, 11 (1969) (citation omitted). "The grounds on which a stay will be granted vary according to the requirements of the particular case in which a stay is sought." *Id.*

However, when a stay is sought pending resolution of another civil suit, three factors are generally paramount in determining the motion. First, the movant must show that a stay will promote judicial efficiency, promoting "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). Second, the movant must show it will suffer hardship if forced to proceed with the litigation it seeks to stay. Third, the court must consider whether a stay will prejudice the opposing party.

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id*., 299 U.S. at 255, 57 S. Ct. at 166; *see also Turner v. Steele,* 47 Kan. App. 2d 976, 993, 282 P.3d 632, 643 (2012) (finding abuse of discretion in refusal to grant a stay where legitimate grounds for the stay were offered and opponents to the stay had not shown that a stay "would have damaged their interests in any measurable fashion"). Here, River Walk shows herein that a stay would damage its interests in a tangible and measurable fashion.

> [A court must weigh three factors in deciding whether to issue a] "stay: (1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer in being required to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law.'" A district court's concern for the last factor, which courts refer to as "judicial efficiency," "standing alone is not necessarily a sufficient ground to stay proceedings."

*In re PG&E Corp. Sec. Litig*., 100 F.4th 1076, 1085 (9th Cir. 2024) (citations & fn. omitted).

YSA's motion addresses only one of these three factors—judicial efficiency—and fails on even that limited showing. As demonstrated below, YSA is wrong as to that factor. And the other two factors—hardship to the movant and prejudice to the opposing party—weigh heavily against issuance of a stay.

**B. A Stay Is Not Needed To Promote Judicial Efficiency**

While the Delaware Action and this case share one central issue—whether YSA had authority to sign second mortgages on, among others, River Walk's Property—a stay of this case is not needed to promote judicial efficiency.

That issue has already been submitted for decision in the Delaware Action after a trial on the plaintiffs' motion for a preliminary and permanent injunction. RJN, Ex. A, # 184, 200. The Chancery court will likely issue its decision on that motion in the very near future, and well before this Court will need to rule on the common issue of YSA's authority to execute the second mortgage. Thus, even without a stay, this Court will, in all likelihood, have the benefit of the Chancery court's decision—with its view of the evidence and law applicable to the facts as

developed in that litigation—before this Court must rule on a similar issue applicable to facts developed in this case.

The Chancery court's ruling will, of course, not be binding on River Walk, which has not been served, and has not participated in the trial or other proceedings in that action. Nevertheless, judicial efficiency will be adequately served without a stay. Even without a stay, by the time it decides this case, the Court will have the benefit of the Chancery court's reasoning as well as the evidence and authorities it finds persuasive or controlling on the one issue common to these two cases.

YSA's motion fails to address this point. Instead, it focuses entirely on an extended analysis of seven other factors that *Henry v. Stewart* found relevant to staying a Kansas state court action pending resolution of a parallel suit **between the same parties in federal** court. Motion, at 5-7. The facts here are materially different. Notably, YSA cites no decision supporting its argument that those same seven factors are relevant to—let alone exclusively determinative of—its motion to stay this action in favor of a suit **between other parties in Delaware state court**. That unsupported lynchpin of YSA's argument runs counter to *Henry v. Stewart's* own admonition that "[t]he grounds on which a stay will be granted vary according to the requirements of the particular case in which a stay is sought." *Henry v. Stewart*, 203 Kan. at 293, 454 P.2d at 11 (citation omitted).

Even so, YSA mis-weighs the seven factors it cites. To begin with, the seven *Henry* factors are not of equal weight. Factors 1, 6, and 7, for example, merely frame the inquiry, eliminating cases in which a stay is obviously unwarranted—i.e., if the other action was later filed, filed in bad faith, or in a court that will not entertain it. That the Delaware Action satisfies these threshold factors is neither surprising nor entitled to significant weight in deciding this motion. Almost any prior-filed action in an established court would satisfy these minimal criteria.

Of far greater importance is factor three—whether the parties, causes of action and issues are the same. Here, they manifestly are not. The two actions share one common issue—YSA's authority to sign second mortgages—but neither the parties nor the causes of action are the same. River Walk, while named as a third-party defendant, still has not been served in the Delaware Action and has in no way participated in that case. The complaint in the Delaware Action alleges only claims for declaratory and injunctive relief. River Walk's petition in this action alleges claims to quiet title, for cancellation of YSA's second mortgage, and for slander of title—claims that are unique to Kansas real property and cannot be adjudicated in the Delaware Action. These differences are critical because any judgment in the Delaware Action will not be claim or issue preclusive against River Walk in this case. That fact greatly diminishes any judicial efficiency argument for awaiting a final resolution of the Delaware Action and lessens the extent to which the Delaware Action affects the outcome of this case—Henry's second factor.

Contrary to YSA's argument, Motion, 6, it is not "more convenient for River Walk and YSA" to resolve the one common issue in the Delaware Action—Henry's fourth factor. While it may be convenient for YSA to litigate that issue in a single mass proceeding in Delaware, it is decidedly not convenient for River Walk. Delaware is anything but a convenient forum for River Walk, which owns a large apartment complex and operates its business exclusively in Kansas. For River Walk, Delaware is a distant and inconvenient forum—one in which it has never participated, never been served, and has no obligation to appear.

Moreover, while the ultimate issue—YSA's authority to execute a second mortgage—may be the same for River Walk's Property as it is for other entities and properties involved in the Delaware Action, YSA has not attempted to show that the facts pertinent to that issue are the same for each of the entities YSA has named as third party defendants. Importantly, LLC agreements

Case 5:26-cv-03214-SLP Document 1-4 Filed 10/23/26 Page 8 of 15

may contain different terms granting or limiting the managing member's authority to deal with the LLC's property or other assets.[2] Similarly, the third-party defendants' relationship with Kulick and his entities may also have differed.[3] If these facts differ among the two dozen or more entities that YSA has named as third-party defendants in the Delaware action, it will not only be inconvenient to try them all in one proceeding but also prejudicial, as River Walk's own more favorable facts may easily be overlooked in the mass of evidence adduced as to other third-party defendants. Thus, for River Walk it is both inconvenient and prejudicial to have its rights determined in the Delaware Action to which it is not a participant.

Finally, YSA wrongly touts Delaware courts' expertise in Delaware law as a reason for staying this action in deference to the Delaware Action under *Henry's* fifth factor. The only "evidence" it cites for the proposition that Delaware law governs any part of River Walk's case or claims is a quoted snippet from the Delaware complaint. Motion, 7 (quoting Motion, Ex. A, ¶ 2). Obviously, Kulick's and his entities' allegations are not legal authority nor are they binding on River Walk.

River Walk does not concede that Delaware law controls its claims. This is, after all, a suit about Kansas real property. Under the Restatement (First) of Conflicts of Law, which Kansas traditionally follows (*M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 576, 556 P.3d 498, 502 (2024)), the law of the state where the real property is situated governs the interpretation, effect, and validity of a conveyance or mortgage of that property as well as the validity, effect, transfer and termination of a power of attorney to convey interests in that property. See Restatement (First) of Conflicts of Law, §§ 214-216, 218, 225, 233. This Court has far more

2 *See, e.g.*, Petition, ¶ 6(a)-(c) alleging that River Walk's LLC Agreement contained provisions denying its manager the authority to enter into any financing or refinancing of River Walk or its assets without a majority vote of River Walk's members—a vote that Kulick and Sponsor never sought or received.

3 *See* Petition, ¶ 6 alleging that Sponsor resigned as River Walk's manager in July 2025.

expertise in Kansas law than any Delaware court. And, the fact that the Chancery court may well apply Delaware conflicts of law rules[4] and possibly also Delaware substantive law in deciding the Delaware Action—either by agreement of the parties to that Action or by application of the Second Restatement's rules—raises an additional reason why any result reached in the Delaware Action may not be determinative or even helpful in resolving River Walk's claims in this case.

YSA's assertion that River Walk "will not be prejudiced by a stay because . . . it was added to the Delaware Case as a third-party defendant, and it can assert the same claims in the Delaware Case," Motion, 1, is both legally and factually wrong. River Walk has not been served in the Delaware Action and has no obligation to appear or litigate there. River Walk's claims—quiet title, cancellation of instrument, and slander of title—are claims directed at Kansas real property that this Court is uniquely positioned to adjudicate. The suggestion that River Walk should abandon the forum it chose for its own claims and instead litigate as an involuntary party in a mass proceeding in Delaware—where it has no presence, no connection, and no control over the pace of litigation—is the antithesis of convenience and would itself constitute prejudice.

## C. YSA Has Not Shown It Will Be Harmed Absent A Stay

As the party seeking the stay, YSA bears "the burden of proof to establish that the stay is ***necessary***" *Harsch*, 288 Kan. at 293, 200 P.3d at 476 (emphasis added). A mere showing that judicial efficiency will be enhanced by a stay does not satisfy that burden. As the United States Supreme Court held 90 years ago, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255, 57 S. Ct. at 166; *see also PG&E Corp. Sec. Litig*., 100 F.4th 1085.

---

[4] Delaware follows the Restatement (Second) of Conflicts of Law and its "most significant relationship" test in answering conflicts of law issues. *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1052 (Del. 2015).

Here, YSA has presented no argument, let alone evidence, to show that it will suffer any "hardship or inequity" if its motion is denied. YSA's motion is entirely silent on this factor. That silence alone warrants denial.

Moreover, even if YSA were right that the central issue, facts, and law in this case were the same as in the Delaware Action (they are not), YSA would, at worst, have to place new captions on its Delaware Action pleadings and file them in this Court. That would hardly constitute "a clear case of hardship or inequity." To the extent that YSA must do more to tailor its pleadings, briefs, and discovery responses to the particular facts and law applicable to this case, that effort not only fails to constitute prejudice but also demonstrates that the Delaware Action will not determine the outcome of this case—further undercutting the judicial efficiency rationale for a stay.

**D. River Walk Will Be Severely Prejudiced By A Stay**

Issuance of a stay pending resolution of the Delaware Action will severely harm River Walk—harm that will be difficult or impossible to remedy later. As its petition alleges, River Walk's $27 million loan from Wells Fargo, which is secured by the first mortgage on the Property, is falling due in the near future. Petition, ¶ 14.

To renegotiate the loan or replace it, River Walk must hold the Property clear of encumbrances other than Wells Fargo's mortgage. *Id.* Prompt resolution of this suit and removal of YSA's improper second mortgage are therefore critical to River Walk's continued ownership of the Property.

Any delay threatens River Walk with inability to renew or replace its loan and hence with default and foreclosure under the first mortgage when the loan it secures falls due.[5] Foreclosure

[5] Indeed, a stay of any duration inflicts concrete prejudice on River Walk, rewards YSA's dilatory conduct, and serves no legitimate judicial purpose.

and sale to a third party would injure River Walk irreparably. *See Gage v. First Fed. Sav. & Loan Ass'n,* 717 F. Supp. 745, 753-54 (D. Kan. 1989).

Despite the speed with which the plaintiffs in the Delaware Action have proceeded on their injunctive relief claim, a stay, such as YSA seeks, pending final resolution of the entire Delaware Action would prevent River Walk from obtaining the relief that it so urgently needs before expiration of its existing loan. While the Delaware plaintiffs have proceeded with commendable dispatch, YSA has done the opposite—taking 86 days from the filing of its amended answer and third-party complaint to even request issuance of a summons on that pleading. YSA's dilatory conduct is not accidental. If a stay issues, YSA will have every incentive to delay the resolution of its third-party complaint even further, hoping that the continued economic pressure exerted by its improperly filed second mortgages will coerce one or more of the third-party defendants, or River Walk, to satisfy its demands—whether or not those demands are legally justified.

Moreover, "resolution" of the Delaware Action will likely not be achieved by entry of judgment alone. An appeal is all but certain, regardless of which party prevails in Chancery court. The stay that YSA seeks could therefore easily last for years—far longer than River Walk can afford to wait to renew or replace its loan. This requested stay is neither necessary nor appropriate. *See Harsch*, 288 Kan. at 293, 200 P.3d at 476.

The public interest also weighs against a stay. The Property is a large apartment complex with over 550 units and provides housing to numerous tenants in the Wichita community. Only stable ownership and management can well serve those tenants, the neighborhood, and the larger community. An owner plagued by years of uncertainty about its continued ownership—proceeding under the threat of foreclosure and loss of its investment—cannot effectively maintain and manage a significant residential property. Wright Decl., ¶ 4. The public interest is therefore best served by

prompt resolution of this dispute, not by an indefinite stay that leaves YSA's void mortgage clouding the Property's title.

**CONCLUSION**

For the reasons stated above, the Court should deny YSA's motion to stay this case. YSA did not satisfy its burden of proof on the motion, and River Walk has shown it will be severely harmed if the requested stay is granted.

Respectfully submitted,

*/s/ Nanette Turner Kalcik*

Nanette Turner Kalcik (KS #24030)
STINSON LLP
1625 N. Waterfront Parkway, Suite 300
Wichita, KS 67206
(316) 268-7926
nanette.kalcik@stinson.com

*Attorneys for Plaintiff River Walk Best Living, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May, 2026, a true and correct copy of the above and foregoing was filed via Kansas Courts e-Filing system that will send notice of electronic filing to the following:

Todd A. Nelson
GABLEGOTWALS
110 N. Elgin, Suite 200
Tulsa, OK 74120
tnelson@gablelaw.com

David P. Limekiller
(admitted *pro hac vice*)
GABLEGOTWALS
110 N. Elgin, Suite 200
Tulsa, OK 74120
dlimekiller@gablelaw.com

*Attorneys for Defendant*

*/s/ Nanette Turner Kalcik*

STINSON LLP
1625 N. Waterfront Parkway, Suite 300
Wichita, Kansas 67206-6620
(316) 265-8800
Fax: (316) 265-1349

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT, SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

RIVER WALK BEST LIVING LLC, a Delaware limited liability company,

Plaintiff,

v.

YSA INVESTMENTS I, LLC, a Delaware limited liability company,

Defendant.

Case No.: SG-2026-CV-001216

Pursuant to K.S.A. Chapter 60

**DECLARATION OF STEPHEN M. WRIGHT**

I, Stephen M. Wright, declare under penalty of perjury that the following statements are true and correct:

1. I am over 18 years of age. I live in Santa Rosa, California. I have personal knowledge of the facts stated in this Declaration, and if called upon as a witness I would testify to the matters stated in it.

2. I currently serve as a counselor and advisor to Presidio Mortgage Holdings, LP as well as its general partner Presidio Mortgage Management LLC ("Presidio") and am familiar with their business operations. Presidio is the manager of River Walk Best Living, LLC ("River Walk"). I am an authorized signatory of Presidio, and in that capacity, I am authorized to provide this declaration on behalf of River Walk.

3. River Walk previously borrowed $27 million from Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo's loan is secured by a first mortgage recorded in 2021. River Walk's loan is


CORE/3535602.0002/243402008.1

falling due in the near future. To renegotiate that loan or obtain a new take-out loan from another lender, River Walk must hold title to the Property clear of other encumbrances. If left of record, the YSA Mortgage will impede and likely prevent River Walk from renegotiating or replacing its loan from Wells Fargo.

4. The Property is a large apartment complex with over 550 units and provides housing to numerous tenants in the Wichita community. Only stable ownership and management can well serve those tenants, the neighborhood, and the larger community. An owner plagued by years of uncertainty about its continued ownership—proceeding under the threat of foreclosure and loss of its investment—cannot effectively maintain and manage a significant residential property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 21, 2026

Stephen M. Wright
Authorized Representative of River Walk Best Living, LLC