# EXHIBIT 5

## Defendant YSA Investments 1, LLC's Reply in Support of Motion to Stay All Claims

ELECTRONICALLY FILED
2026 Jun 08 AM 9:49
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2026-CV-001216
PII COMPLIANT

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

| | | |
|---|---|---|
| RIVER WALK BEST LIVING LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>YSA INVESTMENTS 1, LLC, a Delaware Limited liability company,<br><br>Defendant.<br><br>Proceeding under K.S.A. Chapter 60 | ) | Case No. SG-2026-CV-1216 |

**DEFENDANT YSA INVESTMENTS 1, LLC'S**
**REPLY IN SUPPORT OF MOTION TO STAY ALL CLAIMS**

Defendant YSA Investments 1, LLC ("YSA") hereby submits this Reply in Support of Motion to Stay Claims. Terms not defined in this Reply have the meaning given them into the Motion to Stay Claims (the "Motion").[1]

## INTRODUCTION

This case should be stayed pending a decision on the controlling issue in this case by the Delaware Chancery Court[2] in a closely-related lawsuit between, *inter alia*, YSA and Plaintiff River Walk Best Living LLC ("River Walk"). River Walk admits that "the Delaware Action and this

[1] This Reply was authorized by the Administrative Assistant for Judge Stephen Ternes, Div. 20, on May 28, 2026.

[2] In this Reply, YSA refers to the Delaware Chancery Court lawsuit numbered 2025-1319-KSJM as the "Delaware Chancery Case," or, when quoting River Walk, the "Delaware Action;" and refers to the Delaware Superior Court lawsuit numbered N25C-10-309-KSJM as the "Delaware Superior Case." River Walk is a named party to both lawsuits.



{1806994;}

case share one central issue—whether YSA had authority to sign second mortgages on . . . River Walk's property[.]" But River Walk argues this Court should not stay the pending matter until the Delaware Chancery Court issues a decision "in the very near future" because the short stay will, at some point in the undisclosed future, likely cause harm to River Walk regarding the refinancing of its loan with Wells Fargo. [River Walk's Opposition to Motion (the "Opposition"), pp. 4, 9].

River Walk's claims of harm are undercut by the facts that (1) it concedes the end point of the requested stay, a decision in the Delaware Chancery Case, on the controlling issue is coming "in the very near future;" (2) River Walk cannot claim possible prejudice by a mortgage which was granted and authorized by its Manager Mark Kulick,[3] (3) River Walk, as a Delaware limited liability company, should not claim litigation in Delaware is prejudicial or inconvenient, and (4) the alleged future harm is in no way certain and River Walk fails to specify when or how it will allegedly occur. River Walk further claims that YSA will not be harmed if it is forced to litigate the same issue at the same time in two separate actions over 1,000 miles apart, and, if River Walk gets its way, under two different states' laws.[4] This argument ignores the reality of how expensive, time-consuming, and burdensome it can be to litigate the same complex issue twice as well as the risk of prejudice from contradictory decisions. Thus, a stay will not cause any harm or prejudice to River Walk, will promote judicial efficiency, and conserve the parties' resources.

YSA does not seek an extended, indefinite stay. YSA merely requests that this Court "stay the case until the Delaware [Chancery] court determines whether YSA had authority to execute

---

[3] YSA believes Mr. Kulick continued to act on behalf of River Walk well after his purported termination in July 2025. Ex. 1, Detweiler Decl., ¶ 4

[4] As further discussed in Section II(C), *infra*, YSA contends that Delaware law governs whether YSA had authority under the Loan Agreements to file a mortgage on River Walk's property.



{1806994;}

the Mortgage." [Motion, p. 8]. Again, as River Walk concedes, this ruling is coming "**in the very near future**." [Opposition, p. 4]. Therefore, any arguable prejudice to River Walk would be minimal.

YSA does not seek to harm Riverwalk or prevent River Walk from refinancing. Rather, YSA seeks to collect millions of dollars owed to YSA and to enforce the contractual obligations owed to YSA in Collateral Pledge and Security Agreements and Guarantees (the "Loan Agreements") that induced YSA to lend millions of dollars to Mr. Kulick and his companies. The Loan Agreements specifically and repeatedly state that any dispute related to the Loan Agreements would exclusively be resolved in Delaware under Delaware law. YSA merely asks the Court for a stay to enable YSA to hold Mr. Kulick and his entities, including River Walk, to their obligation to litigate any dispute regarding the Loan Agreements in Delaware. Staying this action is consistent with River Walk's acknowledgement that "the Court will have the benefit of the Chancery Court's reasoning as well as the evidence and authorities it finds persuasive or controlling on the one issue common to the[] two cases" when it decides this case. [*See* Opposition, p. 5].

River Walk's claims of alleged prejudice omit the most important fact--- YSA's mortgage was authorized by River Walk's Manager. It is undisputed that when the Loan Agreements authorizing YSA's mortgage were executed, River Walk was controlled by Mr. Kulick because Mr. Kulick controlled River Walk's Manager River Walk Sponsor LLC.[5] It is contrary to reason that River Walk can now claim prejudice from an act that was authorized by its Manager. In effect, River Walk claims that when it allegedly removed Mr. Kulick as Manager, it somehow erased the past and allowed River to repudiate the acts of its Manager and void all contractual obligations

---

[5] In fact, Mark Kulick, as Manager of River Walk Sponsor LLC, executed the Wells Fargo mortgage of behalf of River Walk.

and encumbrances created by Mr. Kulick as Manager.[6] That is not the law. Any potential prejudice to River Walk was caused solely by the acts of its properly appointed Manager and is in no way attributable to YSA or its mortgage. River Walk cannot now shift the blame from its Manager to YSA simply because River Walk desires to refinance its indebtedness to Wells Fargo. To the extent River Walk alleges here (or in the Petition) that Mr. Kulick acted beyond his authority, River Walk's proper remedy is an action against the actual wrongdoer Mr. Kulick, and not against YSA, who was just an innocent third-party lender.[7]

Thus, the question of what obligations Mr. Kulick, as Manager, and the Loan Agreements imposed on River Walk are properly before the first-filed Chancery Court Case as required by the Loan Agreements. River Walk's claim that Delaware is an inconvenient forum and it merely "owns a large apartment complex and operates it business exclusively in Kansas" (Opposition p. 7) is not persuasive. River Walk as a Delaware limited liability company should not have any objection to litigating in Delaware. River Walk, like all the other Kulick-controlled entities, should have their rights against YSA, and the scope of the Loan Agreements, determined by the Chancery Court Case and the Superior Court Case. Therefore, the Court should grant a stay until the Delaware Chancery Court issues a ruling on the "ultimate issue" in this case: YSA's authority to execute the Mortgage pursuant to Loan Agreements governed by Delaware law.

**DISCUSSION**

---

[6] Kulick continued to represent and act on behalf of River Walk after his entity, River Walk Sponsor, LLC was allegedly removed as manager of River Walk on July 1, 2025. [For numerous examples of his acts *See, e.g.*, Ex. 2, Settlement Agreement dated October 28, 2025; *see also* Ex. 1, Detweiler Decl., ¶ 2, 4.]

[7] Based on all facts known to YSA at the time, it reasonably believed that Mr. Kulick (and/or his entities) had the authority to grant YSA a mortgage on River Walk's property through the terms of the Loan Agreements. Ex. 1, Detweiler Decl., ¶ 2-3 ].

**I. Any delay in serving River Walk in the Chancery Court Case or the Superior Court Case is not cause to deny the stay.**

Throughout the Opposition, River Walk alleges that YSA was "dilatory" in prosecuting its claims against River Walk, and further argues such delay justifies denying a stay. The reason YSA did not immediately serve River Walk in the Delaware cases is because there were ongoing, extensive settlement discussions between YSA and Kulick. [Ex. 1, ¶ 5]. When it became apparent that settlement could not be reached, YSA requested the court issue a summons in the Delaware Chancery Case on May 8, 2026. [Ex. 1, ¶ 5]. However, the court took twenty-one (21) days to approve the summons, which delay cannot be held against YSA. [*Id.*]. Currently, in the Chancery Court Case, River Walk was served with the Summons and Third-Party Complaint on June 2, 2026 [Ex. 3, Summons and Affidavit of Service] and in the Superior Court Case, the Summons for River Walk was issued on June 4, 2026. [Ex. 4, Summons in Delaware Superior Case]. YSA should not be penalized for its efforts to settle its claims against Kulick and his entities, and regardless of River Walk's arguments, it was a party defendant in Delaware before this action was filed.

**II. This Court should apply the factors prescribed by the Kansas Supreme Court rather than the Ninth Circuit's factors proposed by River Walk.**

In its Opposition, River Walk cites a Ninth Circuit case applying Ninth Circuit law for the factors this Court should consider in determining whether a stay is warranted. *See* Opposition, p. 4 (citing *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024)). In *In re PG&E Corp. Sec. Litig.*, the Ninth Circuit was considering whether to stay the federal case based on a related bankruptcy action. 100 F.4th at 1082-83. River Walk then argues that this Court should ignore the factors espoused by the Kansas Supreme Court in *Henry v. Stewart*, 203 Kan. 289, 454 P.2d 7 because *Henry* considered whether to stay the case based on another federal case and "YSA cites no decisions supporting its argument that those . . . factors are relevant to" this case.



{1806994;}

[Opposition, p. 5].

River Walk's reliance on *In re PG&E Corp. Sec. Litig* is questionable, at best. River Walk cites no Kansas case relying on *In re PG&E Corp. Sec. Litig* or applying the Ninth Circuit factors to determine whether to grant a stay. *Id.* Moreover, as laid out in YSA's Motion, the Kansas Court of Appeals relied on *Henry* when determining whether a stay should be granted outside the context of an earlier federal case when the earlier, related case was filed in Kansas state court. *Turner v. Steele*, 47 Kan. App. 2d 976, 991, 282 P.3d 632, 642 (2012). Therefore, *Henry*'s "determinative factors" are instructive on whether a stay should be granted in this case; and, at the very least, are more relevant than the Ninth Circuit factors.

However, as discussed in Section II, *infra*, even if the Court applies the Ninth Circuit factors, a stay is still warranted.

**III. Granting a short stay (A) would not cause River Walk irreparable harm, (B) would prevent harm to YSA, and (C) would preserve judicial resources by allowing the Delaware court to resolve the esoteric question of Delaware law it has already devoted significant resources to considering.**

River Walk claims that a stay should not be granted because (1) it will likely cause irreparable harm to River Walk in the future by preventing it from refinancing its Wells Fargo loan that will be due at some unspecified date; (2) YSA will not be harmed by the refusal to grant a stay; (3) River Walk has not yet been served in the Delaware Chancery Court case; and (4) this Court would apply Kansas law to determination of "the validity, effect, transfer and termination of a power of attorney" in the Loan Agreements governed by Delaware law. *See* Opposition.

Contrary to River Walk's arguments, a stay should be granted because (1) it would not cause River Walk irreparable harm, or any harm, given that (i) River Walk's Manager authorized YSA's mortgage, and River Walk cannot claim prejudice from actions performed and approved

by its Manager,[8] and (ii) the Delaware "Chancery court will likely issue its decision . . . in the very near future;" [Opposition, p. 4]; [Ex. 1, ¶ 5]; (2) YSA will be harmed if it is forced to expend resources litigating the same issue in two venues that are over 1,000 miles apart; and (3) River Walk was served in the Delaware Chancery Case and its summons was issued in the Delaware Superior Case; [Ex. 3; Ex. 4]; and (4) Kansas respects parties' freedom to select the governing law, *Enter. Bank & Tr. v. Barney Ashner Homes, Inc.*, 300 P.3d 115, 2013 WL 1876293, at *8 (Kan. Ct. App. 2013) ("The Kansas choice-of-law rule favors enforcing the decision of contracting parties to designate another jurisdiction's substantive law to govern their agreement."), and no party in the Delaware Chancery Case or the Delaware Superior Case has challenged the application of Delaware law to the Loan Agreements. [Ex. 1, ¶ 8].

**A. A stay would not cause any—much less irreparable—harm to River Walk.**

River Walk's sole basis for arguing a stay will cause irreparable harm—that it will prevent River Walk from refinancing the Wells Fargo loan—has no merit because as shown above YSA's mortgage was authorized by River Walk's Manager. River Walk has provided no authority that it can disown Mr. Kulick's prior acts as Manager and cancel YSA's mortgage or claim prejudice. Accordingly, a stay will cause no prejudice to River Walk.

River Walk also argues that Kansas is a more convenient forum for River Walk, in part, because it "has no obligation to appear" in Delaware. However, River Walk is a party to two separate cases in Delaware: the Delaware Chancery Case filed by Kulick and his entities against YSA and the Delaware Superior Case filed by YSA against Kulick and his entities and Delaware's jurisdiction over River Walk will be determined by its acts taken while Kulick was its Manager.

---



{1806994;}

Separately, the real issue is not whether it is more convenient to litigate in Kansas or Delaware, and River Walk's argument otherwise is a red herring. Rather, the real issue is whether it is more convenient or efficient to litigate the same issue in Delaware and Kansas simultaneously, or to litigate the issue in Delaware first as required by the Loan Agreements and in actions where River Walk is a party, and then apply the Delaware Court's decision in Kansas after the parties have the benefit of the Delaware Chancery Court's decision, reasoning and authorities.

To summarize, the Court should stay this case because there is no threat of any harm to River Walk, the Delaware Chancery Court should issue its decision on the Loan Agreements in the near future, and the benefits of having the Delaware Chancery decision at the outset of this litigation outweighs any potential burdens to the parties.

**B. A stay would force YSA, and River Walk, to litigate the same issue in two far-apart venues and, potentially, under two different laws.**

Denying the stay would harm YSA because it would be forced to simultaneously litigate the same complex power of attorney and collateral issues in two venues that are over 1,000 miles apart. Obviously, this would substantially increase YSA's litigation costs and impose additional burdens on its management and employees through duplicative document productions and depositions. [Ex. 1, ¶ 9]. Moreover, River Walk asserts (and YSA disputes) that this court will apply Kansas law to interpret the Loan Agreements, which is good cause to grant the stay. [*See* Opposition, pp. 7-8]. River Walk's position would require the same Loan Agreements to be interpreted under Kansas or Delaware law in separate actions in different states (where River Walk is a party). Thus, a stay is warranted to avoid the real possibility for inconsistent rulings on the same Loan Agreements, which clearly prejudices YSA and ignores the principles of collateral estoppel and res judicata.



{1806994;}

### C. The Court should stay the case to preserve judicial resources and get the benefit of the Delaware Chancery Court's decision and reasoning.

River Walk argues that Kansas law controls the determination of whether the Loan Agreements authorized YSA to record the Mortgage—even though the parties agreed in the Loan Agreements that Delaware law governs the Agreements—because this is "a suit about Kansas real property." (Opposition, p. 7). Rather than citing a Kansas case for this proposition, River Walk relies on Restatement (First) Conflict of Laws. *Id.* However, the Kansas Supreme Court has given effect to parties' choice of Missouri law in a mortgage that covers Kansas real property. *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 705-07, 810 P.2d 1154, 1157-59 (1991); *see also Enter. Bank & Tr. v. Barney Ashner Homes, Inc.*, 300 P.3d 115, 2013 WL 1876293, at *8 (Kan. Ct. App. 2013), *supra*. Therefore, Delaware law applies to the interpretation of the Loan Agreements, and this Court should stay the case in order to get the benefit of the Delaware Chancery Court's decision on these niche, complex issues of Delaware law.[9]

## CONCLUSION

This Court should grant a brief stay of this case until a decision is issued in the Delaware Chancery Case on the controlling issue of this lawsuit. Granting a stay will not prejudice River Walk because (i) River Walk cannot claim prejudice from a mortgage approved by its Manager, (ii) the alleged harm, if any, to River Walk is not specified, not certain to occur, and would only happen at some unstated future time. By contrast, refusing to grant a stay will harm YSA by forcing

[9] Even if this Court ultimately decides to apply Kansas law to determine the scope of YSA's authority under the Loan Agreements, as River Walk concedes, having the benefit of the Delaware Chancery Court's decision and reasoning when it considers the complex, unique issue will only benefit the Court and the parties. [*See* Opposition, p. 5 ("[T]he Court will have the benefit of the Chancery court's reasoning as well as the evidence and authorities it finds persuasive or controlling on the one issue common to the[] two cases.")].

it to litigate the same issue at the same time using two separate legal teams in forums that are over a thousand miles apart, which may result in inconsistent decisions.

Dated this 5th day of June, 2026.

Respectfully submitted,

*/Todd A. Nelson/*

Todd A. Nelson, No. 16028
GABLEGOTWALS
110 N. Elgin, Ste. 200
Tulsa, Oklahoma 74120
Telephone: (918) 595-4800
Facsimile: (918) 595-4990
E-Mail: *tnelson@gablelaw.com*

*Admitted Pro Hac Vice:*
David P. Limekiller, OBA No. 18173
GABLEGOTWALS
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120-1495
Telephone: (918) 595-4800
Facsimile: (918) 595-4990
E-mail: dlimekiller@gablelaw.com

Attorneys for Defendant YSA Investments 1, LLC

**CERTIFICATE OF SERVICE**

I certify that the foregoing Defendant YSA Investments 1, LLC's Reply in Support of Motion to Stay All Claims was served, via electronic mail, on this 5th day of June, 2026 to the following:

Nanette Turner Kalcik
Stinson LLP
1625 N. Waterfront Parkway
Suite 300
Wichita, Kansas 67206

*/Todd A. Nelson/*
Todd A. Nelson

ELECTRONICALLY FILED
2026 Jun 08 AM 9:49
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2026-CV-001216
PII COMPLIANT

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

| | | |
|---|---|---|
| RIVER WALK BEST LIVING LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>YSA INVESTMENTS 1, LLC, a Delaware Limited liability company,<br><br>Defendant.<br><br>Proceeding under K.S.A. Chapter 60 | ) | Case No. SG-2026-CV-1216 |

# EXHIBIT 1

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

| | | |
|---|---|---|
| RIVER WALK BEST LIVING LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>YSA INVESTMENTS 1, LLC, a Delaware Limited liability company,<br><br>Defendant. | ) | Case No. SG-2026-CV-1216 |

Proceeding under K.S.A. Chapter 60

DECLARATION OF PARKER DETWEILER IN SUPPORT OF
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO STAY ALL CLAIMS

STATE OF FLORIDA )
) ss:
COUNTY OF MIAMI-DADE )

**Parker Detweiler**, being of lawful age, and first duly sworn, hereby declares under penalty of perjury that the following statements are true and correct:

1. I am the Outside Real Estate Consultant for Defendant YSA Investments 1, LLC ("YSA"). This Declaration is based on my personal knowledge and submitted in support of YSA's Reply in Support of Motion to Stay Claims. Terms not defined in this Declaration have the meaning given to them into the Motion to Stay Claims or the Reply.

2. YSA reasonably believed that Marc Kulick, or an entity he controls and owns, was the manager of River Walk Best Living LLC ("River Walk") because he held himself out to be its manager and he had entered into contracts, including the Wells Fargo mortgage, on River Walk's behalf for years. Mr. Kulick continued to represent and act on behalf of River Walk after his entity,

River Walk Sponsor, LLC was allegedly removed as manager of River Walk on July 1, 2025 (including communications with Wells Fargo regarding River Walk's loan). YSA had no reason to believe that Mr. Kulick was not the manager of River Walk until it received the demand letter from Stinson LLP purportedly on behalf of River Walk that is dated March 16, 2026. In fact, YSA has knowledge that Mr. Kulick was working with Wells Fargo regarding River Walk's loans as recently as December 2025.

3. At the times the Loan Agreements were executed, YSA believed Mr. Kulick or the entities he owned or controlled, including River Walk had the authority to grant YSA a mortgage on River Walk's property as authorized by the terms of the Loan Agreements, and such right was material to YSA's decision to make loans to Mr. Kulick and his entities.

4. Absent River Walk's demand letter and the instant action, YSA has reasonably believed that, regardless of Mr. Kulick's formal title held in relation to his services performed for River Walk, he has continued to exercise managerial authority on behalf of River Walk through at least December 2, 2025. YSA bases this reasonable belief upon:

i. YSA's belief that, until at least December 2, 2025, Mr. Kulick was communicating with a representative of Wells Fargo, regarding the refinancing of River Walk's loan, including by, *inter alia*, providing financial statements, rent rolls, and a tax return;

ii. YSA's belief that at least one vendor who allegedly performed services on behalf of the River Walk property was communicating simultaneously with Mr. Kulick and with River Walk's new management regarding filing a lien, including text messages on or around October 20, 2025—following the date of Mr. Kulick's alleged July 1, 2025 termination;

iii. YSA's belief that Mr. Kulick maintained viewing and/or access privileges to one or more bank accounts held by River Walk following the date of Mr. Kulick's alleged July 1, 2025 termination, including YSA's belief that Mr. Kulick maintained access to an account referred to in shorthand as "River Walk Security Deposit"—which account information which YSA reasonably believes was shared with a merchant cash advance provider by Mr. Kulick on July 9, 2025 in the course of Mr. Kulick seeking funding related to one or more investment properties under his control and/or management;

iv. YSA's belief that—notwithstanding River Walk's purported intent to terminate Mr. Kulick's management related to River Walk—YSA will be able to obtain evidence demonstrating River Walk's intent to require Kulick and/or his companies to continue maintaining River Walk's insurance policy or policies beyond July 1, 2025 (regardless of whether such intent was effectuated);

v. YSA's belief that Mr. Kulick continued to claim responsibility for personal injury and contractor-related payment demands incurred in relation to the River Walk property despite the fact that such demands were not made until months later than July 1, 2025;

vi. YSA's belief that River Walk continued to offer and execute guarantees related to one or more merchant cash advances and/or sales of future receipts obtained by Vesta Realty, LLC after the month of July 2025, the same which were signed by Mr. Kulick on behalf of River Walk;

vii. YSA's belief that Vesta's chief operating officer, Ben Didier, continued to execute one or more settlement agreements related on behalf of River Walk following the month of July 2025;

viii. YSA's belief that Vesta's principal, Mr. Kulick, continued to execute one or more settlement agreements related on behalf of River Walk following the month of July 2025 in which he signed in the capacity of an owner, manager, and agent of River Walk; and

ix. YSA's belief that Vesta continued to monitor liens placed against River Walk after July 2025 in accordance with its monitoring practices related to other properties managed by Vesta.

5. YSA did not immediately serve River Walk in the Delaware Chancery Court case numbered 2025-1319-KSJM or in the Delaware Superior Court case numbered N25C-10-309-KSJM because YSA was engaged in extensive, ongoing settlement discussions with Mr. Kulick on behalf of himself and the loan parties he owns and/or controls. Once it because apparent that settlement could not be reached, YSA requested the court issue a summons in the Delaware Chancery Case on May 8, 2026. Service was further delayed because the Delaware Chancery Court took twenty-one (21) days to issue and approve the summons.

6. YSA has been advised that River Walk was served in the Delaware Chancery Case on June 2, 2026.

7. The trial of the injunction in the Delaware Chancery Case concluded on March 5, 2026. YSA expects that the Court will soon render a decision based on the ninety-day limit prescribed by the rules of the Court.

8. No party in either Delaware case has challenged, and neither judge has questioned, the application of Delaware law to the Loan Agreements pursuant to which YSA filed its Mortgage.

9. If YSA is forced to litigate whether it was entitled to record its Mortgage pursuant to the Loan Agreements simultaneously in Delaware and Kansas, it will be harmed. YSA will be harmed because its litigation costs will substantially increase and the simultaneous litigation will impose additional burdens on its management and employees through duplicative document productions and depositions. I believe this burden will increase if this Court decides to apply Kansas law to determine YSA's authority under the Loan Agreements.

I declare under penalty of perjury that the foregoing is true and correct.

Parker Detweiler
______________________________
Parker Detweiler
Outside Real Estate Consultant
YSA Investments 1, LLC

ELECTRONICALLY FILED
2026 Jun 08 AM 9:49
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2026-CV-001216
PII COMPLIANT

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

RIVER WALK BEST LIVING LLC, a Delaware limited liability company )
)
Plaintiff, )
)
vs. ) Case No. SG-2026-CV-1216
)
YSA INVESTMENTS 1, LLC, a Delaware Limited liability company, )
)
)
Defendant. )
)
Proceeding under K.S.A. Chapter 60 )

# EXHIBIT 2

# Exhibit A

# SETTLEMENT AGREEMENT and RELEASE

This Settlement Agreement and Release (this "Settlement Agreement") is entered into as of October 28, 2025 (the "Effective Date"), by and among American Funding Services Inc ("Secured Party"), an entity duly organized and existing under the laws of the State of New York, with an address at 366 N Broadway, Jericho, NY 11753, Vesta Capital, LLC, One Eton Square LLC, Copperflield Apartments Limited Partnership, Avana Best Living LLC, Canopy Best Living LLC, Barcelona Best Living LLC, Auerbach Vesta 23 East LLC d/b/a A V 23 East Owner LLC, Remington Ranchs Best Living LLC, Thrive Argenta Owner, LLC, Argenta's Best Living Investors, LLC, Argenta's Best Living, LLC, Vesta Realty, LLC, River Walk Best Living LLC, Villas at Midtown Best Living LLC, B & J Woodscape Oklahoma City LLC (collectively, the "Merchant") and Marc Louis Kulick (the, "Guarantor," and together with Merchant, the "Debtor"). Debtor and Secured Party shall hereinafter be collectively referred to as the "Parties."

**WHEREAS**, the Parties entered into a certain agreement, dated as of 06/25/2025, whereby Secured Party purchased $437,700.00 of Merchant's future accounts-receivable for the purchase price of $300,000.00 (the "06/25/2025 Secured Agreement"),

**WHEREAS**, the Parties entered into a certain agreement, dated as of 07/22/2025, whereby Secured Party purchased $1,648,900.00 of Merchant's future accounts-receivable for the purchase price of $1,100,000.00 (the "07/22/2025 Secured Agreement" and together with the 06/25/2025 Secured Agreement, the "Secured Agreements"),

**NOW THEREFORE**, in consideration of the mutual promises set forth herein, the sufficient of which is hereby acknowledged, the Parties agree to the following:

1. **Payments:** Debtor agrees to pay to Secured Party, and Secured Party agrees to accept **$1,490,431.25** (the "Settlement Sum"), as settlement in full of Secured Party's claims against Debtor, payable as follows:

a. Debtor agrees to pay the amounts pursuant to the below schedule (each, an "Settlement Payment") to Secured Party, via wire, electronic transfer, or direct deposit to Secured Party with simultaneous email confirmation. If the Debtor makes all Settlement Payments in accordance with the payment schedule below, the final payment shall be due no later than July 5, 2027, unless prepayment is made. Each Settlement Payment will be considered timely if received within two (2) business days of its scheduled due date.

| Payment Amount: | Date Due: |
|---|---|
| $50,000.00 per month | November 5, 2025 until April 5, 2026 |
| $75,000.00 per month | May 5, 2026 until October 5. 2026 |
| $100,000.00 per month | November 5, 2026 until Paid in Full |

[redacted]

**SETTLEMENT AGREEMENT and RELEASE**
Effective Date: October 31, 2025

[redacted]

2. **Non-Admission of Liability:** The Parties understand and agree that the execution of this Settlement Agreement will not constitute or be construed as an admission of any wrongdoing, liability, unlawful conduct or violation of any law, rule, regulation, duty, contractual right or any other obligation by the Parties or anyone affiliated with or acting on the Parties' behalf.

3. **Terms and Conditions.**

a. In the event of a default, as per Section 4 of this Settlement Agreement the unpaid balance of the Settlement Sum shall become immediately due and payable to Secured Party.

b. To the extent that Debtor timely remit payments pursuant to Section 1 of this Settlement Agreement, Secured Party shall not take any further legal action to enforce its rights, except as provided for in Section 4 hereof.

c. The parties agree that the amount of the Settlement Sum to which they have agreed in Section 1 above, is not, nor shall it be construed as, a penalty imposed upon Debtor.

4. **Event of Default:** If Debtor shall fail to timely and in full make any and all payments that are required under Section 1 of this Settlement Agreement, Secured Party shall notify Debtor via email to marc@vestarealproperty.com and Debtor shall have three (3) days to cure the default. If Debtor fails to cure the default,, then the Debtor shall be deemed to have defaulted under the terms of this Settlement Agreement. In the event of such default, Secured Party shall have the following rights:

a. Enforce its rights under Article 9 of the UCC against Merchant;

b. Bring any and all additional claims Secured Party may have against Merchant and/or Guarantor, without any prejudice to any other rights, claims or defenses that Secured Party may have against Merchant and/or Guarantor.

5. **Merchant and Guarantor's Representations and Warranties.** Merchant and Guarantor each hereby warrants and represents that:

a. Merchant and Guarantor each expressly consents, acquiesces and acknowledges to legality of the Secured Agreements and Plaintiff's ability to capture Frozen Funds, and hereby expressly waives any and all claims, defenses, counterclaims, appeals, and rights to resist any and all actions and/or enforcement measures taken or to be taken by Secured Party and/or its attorneys or agents;

b. Merchant and/or Guarantor each acknowledges that Secured Party is placing significant reliance on the foregoing representations and warranties, and

furthermore, Secured Party would not enter into this Settlement Agreement but for its reliance on the accuracy of the foregoing representations and warranties made by Merchant and Guarantor.

6. **<u>UCC Release and Zero Balance Letter</u>.** Upon Debtor's complete payment of the full Settlement Sum, Secured Party shall terminate any UCC security interest(s) and provide a zero-balance letter.

7. **<u>Releases</u>:** Except as otherwise provided for in this Settlement Agreement:

a. The Debtor, individually, jointly and severally, forever releases and discharges Secured Party and its directors, officers, shareholders, members, affiliates, subsidiaries, administrators, successors, attorneys and employees (collectively, the "Secured Party Releases Parties") from all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which Debtor and their directors, officers, directors, shareholders, members, agents, employees, attorneys, parents, affiliates, subsidiaries, heirs, administrators, successors and assigns ever had, now have or hereafter can, shall or may have, whether known or unknown, against Secured Party Releases Parties, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of time and through the date of the execution of this Settlement Agreement.

b. Upon_receipt of the executed Settlement Agreement and complete and timely payment of the Settlement Amount, Secured Party shall release and discharge Debtor and their administrators, conservators, heirs, successors and assigns (collectively, the "Debtor Released Parties"), from all Claims which Secured Party and its successors and assigns ever had, now have or hereafter can, shall or may have, whether known or unknown, against the Debtor Released Parties, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of time and through the date of the execution of this Settlement Agreement.

8. **<u>No Negative Interpretation</u>.** Secured Party, Merchant and Guarantor each agree that this Settlement Agreement has been jointly drafted, so that in the event any portion, word, clause, phrase, sentence or paragraph of the Settlement Agreement is deemed ambiguous, said ambiguity shall not be construed against either of the Parties. Each Party represents and warrants that (i.) It has read this Settlement Agreement or had it read to it at length by its counsel, if any; (ii.) it understands and fully agrees to each, all, and every provision of this Settlement Agreement; (iii.) has been advised by counsel as to the meaning and implications of this Settlement Agreement or has voluntarily waived procurement of counsel; (iv.) there has been no assignment, transfer, pledge, mortgage, lien, or other encumbrance of any kind made or placed on any of the claims or causes of action described in this Settlement Agreement; and (v.) desires to enter into this Settlement Agreement and is doing so voluntarily.

9. **Term of this Settlement Agreement.** The term of this Settlement Agreement shall commence on the Effective Date hereof and shall expire on the date when the Settlement Sum is paid to Secured Party in full. The representations and warranties contained herein shall survive the expiration or early termination of this Settlement Agreement and shall be enforceable in any Court located in the State of New York.

10. **Amendment.** No waiver, amendment or modification of this Settlement Agreement shall be effective unless in writing and signed by the Party against whom the waiver, amendment or modification is sought to be enforced.

11. **Choice of Law and Venue.** This Settlement Agreement is entered into in the State of New York and shall be construed and interpreted in accordance with the laws of the State of New York without regard to any conflict of law principles. Any disputes or litigation arising under or out of this Settlement Agreement shall be brought in the Supreme Court of the State of New York or a Federal District Court located in the State in New York.

12. **Successors.** This Settlement Agreement is binding upon the heirs, successors and assigns of the Parties, and inures to the benefit of the heirs, successors and assigns of the Parties.

13. **Severability.** The provisions of this Settlement Agreement are severable and the invalidity or unenforceability of any provision of this Settlement Agreement shall not affect the validity or enforceability of any other provision. In the event that any provision of this Settlement Agreement (or portion thereof) is determined by a court of competent jurisdiction to be unenforceable, Parties mutually agree that such portion shall be considered severable and separable from the remainder, and the validity of the remainder of the Settlement Agreement shall remain unaffected and enforceable.

14. **Additional Documents/Further Assurances.** The parties agree to cooperate fully in the execution and delivery of any additional documents and to take all additional further actions that may be necessary, appropriate or desirable to fully carry out the provisions, and intent of this Settlement Agreement.

15. **Execution.** This Settlement Agreement may be executed in multiple counterparts, and each of such counterparts so executed shall be deemed an original. All such counterparts together shall be deemed to constitute one final Settlement Agreement as if signed by all parties hereto. A telecopy or facsimile or electronic transmission of a signed counterpart of this Settlement Agreement shall be sufficient to bind the parties whose signatures appear thereon.

16. **Authority.** The person acting on behalf of the Debtor to this Settlement Agreement represents that they have full authority/authorization to execute this Settlement Agreement (including the releases) on behalf of the respective entity.

[SIGNATURES ON FOLLOWING PAGE]

Case 5:26-cv-03214-SLP Document 1-5 Filed 10/23/26 Page 25 of 40

**SETTLEMENT AGREEMENT and RELEASE**
Effective Date: October 31, 2025

**IN WITNESS WHEREOF** the parties have executed this Settlement Agreement as of the Effective Date set forth above.

## AGREED AND ACCEPTED:

**American Funding Services Inc**

By: Gurwant J Pannu Jr.
Gurwant J Pannu Jr. (Mar 18, 2026 09:03:35 PDT)

Name: Gurwant J Pannu Jr.
Title: Authorized Representative

**Vesta Capital, LLC, One Eton Square LLC, Copperflield Apartments Limited Partnership, Avana Best Living LLC, Canopy Best Living LLC, Barcelona Best Living LLC, Auerbach Vesta 23 East LLC d/b/a A V 23 East Owner LLC, Remington Ranchs Best Living LLC, Thrive Argenta Owner, LLC, Argenta's Best Living Investors, LLC, Argenta's Best Living, LLC, Vesta Realty, LLC, River Walk Best Living LLC, Villas at Midtown Best Living LLC, B & J Woodscape Oklahoma City LLC**

By: Marc Kulick
Marc Louis Kulick
Owner/Manager/Agent

**Guarantor**

By: Marc Kulick
Marc Louis Kulick

# Vesta Capital SA 10.31.25

Final Audit Report 2025-10-31

| | |
|---|---|
| Created: | 2025-10-31 |
| By: | AFS Partners (partners@americanfundingservices.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMb0WT1UYD6vRLO31vK5wlYfRuMByYe40 |

## "Vesta Capital SA 10.31.25" History

- Document created by AFS Partners (partners@americanfundingservices.com)
  2025-10-31 - 11:14:40 PM GMT

- Document emailed to Marc Louis Kulick (marc@vestarealproperty.com) for signature
  2025-10-31 - 11:14:45 PM GMT

- Email viewed by Marc Louis Kulick (marc@vestarealproperty.com)
  2025-10-31 - 11:29:43 PM GMT

- Document e-signed by Marc Louis Kulick (marc@vestarealproperty.com)
  Signature Date: 2025-10-31 - 11:29:59 PM GMT - Time Source: server

- Agreement completed.
  2025-10-31 - 11:29:59 PM GMT

Adobe Acrobat Sign

# Settlement Agreement - Vesta Capital

Final Audit Report 2026-03-18

| | |
|---|---|
| Created: | 2026-03-18 |
| By: | [redacted] |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAi4JOJXUMk1XjmUMa32C5HNYpbliWd4RU |

## "Settlement Agreement - Vesta Capital" History

Document created by [redacted]
2026-03-18 - 3:48:50 PM GMT

Document emailed to Gurwant J Pannu Jr. (collections@americanfundingservices.com) for signature
2026-03-18 - 3:49:00 PM GMT

Email viewed by Gurwant J Pannu Jr. (collections@americanfundingservices.com)
2026-03-18 - 4:02:56 PM GMT

Document e-signed by Gurwant J Pannu Jr. (collections@americanfundingservices.com)
Signature Date: 2026-03-18 - 4:03:35 PM GMT - Time Source: server

Agreement completed.
2026-03-18 - 4:03:35 PM GMT

Adobe Acrobat Sign

ELECTRONICALLY FILED
2026 Jun 08 AM 9:49
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2026-CV-001216
PII COMPLIANT

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

| | | |
|---|---|---|
| RIVER WALK BEST LIVING LLC, a Delaware limited liability company | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. SG-2026-CV-1216 |
| YSA INVESTMENTS 1, LLC, a Delaware Limited liability company, | ) | |
| Defendant. | ) | |
| Proceeding under K.S.A. Chapter 60 | ) | |

# EXHIBIT 3

EFiled: Jun 04 2026 12:13PM EDT
Transaction ID 79647949
Case No. 2025-1319-KSJM

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>YSA INVESTMENTS 1, LLC,<br><br>Defendant, | C.A. No. 2025-1319-KSJM |
| YSA INVESTMENTS 1, LLC,<br><br>Counterclaimant and Third-Party Plaintiff,<br><br>v.<br><br>MARC KULICK, VESTA HOLDINGS LLC, BARTLESVILLE BEST LIVING, LLC; SHORELINE'S BEST LIVING, LLC; SPRINGDALE VILLAGE TIC 1 LLC; SPRINGDALE VILLAGE TIC 2, LLC; SPRINGDALE VILLAGE TIC 3, LLC; SPRINGDALE VILLAGE'S BEST LIVING, LLC; A-V 23 EAST OWNERS, LLC; A-V CLASSEN OWNER, LLC; A-V VILLAGE CREEK OWNER, LLC; AUERBACH-VESTA, LLC; BARCELONA BEST LIVING, LLC; BRYAN HILLS BEST LIVING, LLC; EATON PLACE TIC 1 LLC; FAIRFAX HOLDING COMPANY, LLC; LAKESIDE BEST LIVING LLC; LOFTS AT NORTH PENN BEST LIVING LLC;; MONTGOMERY APARTMENT HOLDINGS, LLC; MONTGOMERY BEST | |

LIVING, LLC; MUNTAGE BEST LIVING, LLC; NAE CANOPY APARTMENTS, LLC; OKC3 INVESTORS LLC; ONE ETON TIC 1 LLC; REMINGTON RANCH BEST LIVING LLC; RIDGE BEST LIVING INVESTORS LLC; RIDGE BEST LIVING, LLC; RIVER WALK BEST LIVING, LLC; RIVERPARK BEST LIVING, LLC; SUMMER OAKS BEST LIVING LLC; TUSCANY VILLAGE BEST LIVING LLC; VESTA-SEMINOLE RIDGE LLC; VILLAS AT MIDTOWN BEST LIVING LLC; W.M. BEST LIVING OWNER, LLC; W.O. SOLE MEMBER LLC; WOODLAND OAKS BEST LIVING LLC; JENKS BEST LIVING LLC; LOUIS INVESTMENTS LLC; LS APARTMENT SPONSOR LLC; RIVER WALK SPONSOR LLC; RIVERPARK BEST LIVING INVESTORS, LLC; SEMINOLE RIDGE APARTMENTS HOLDINGS LLC; SEMINOLE RIDGE SPONSOR LLC; TUSCANY VILLAGE SPONSOR LLC; VESTA HOLDINGS, LLC; 206 QUEEN ANNE CLUB LLC; B&J WOODSCAPE / OKLAHOMA CITY, LLC; AND COPPERFIELD APARTMENTS, LP, and related entities, identified presently as DOES 1-100 and ROES 1-100,

Counterdefendants and
Third-Party Defendants.

**THE STATE OF DELAWARE**

**TO – PARCELS INC.**

**YOU ARE COMMANDED:**

To Summon the above-named third-party defendants by service pursuant to 6 Del. C. § 18-105, by serving them c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801, so that within the time required by law, such defendant shall serve upon Sarah R. Martin, Esquire, plaintiff's attorney, whose address is Greenberg Traurig, LLP, 222 Delaware Avenue, Suite 1600, Wilmington, DE 19801, an answer to the third-party complaint.

To serve upon third-party defendants a copy hereof, of the [DOCUMENTS]

**TO THE ABOVE-NAMED DEFENDANTS:**

In case of your failure, within the time permitted by 6 Del. C. § 18-105*, to serve on defendant's attorney named above an answer to the third-party complaint, judgment by default may be rendered against you for the relief demanded in the third-party complaint.

Dated: May 29, 2026

Tamara M. Burton
Register in Chancery

*The text of 6 Del. C. § 18-105 is set out on the reverse of this Summons

**C.A. No. 2025-1319-KSJM**

YSA INVESTMENTS 1, LLC,

Counterclaimant and
Third-Party Plaintiff,

v.

MARC KULICK, et al

Counterdefendants and
Third-Party Defendants.

**SUMMONS**

Please effectuate service upon:

1. **MUNTAGE BEST LIVING, LLC**
2. **MONTGOMERY APARTMENTS HOLDINGS, LLC**
3. **MONTGOMERY BEST LIVING, LLC**
4. **LOFTS AT NORTH PENN BEST LIVING LLC**
5. **LAKESIDE BEST LIVING LLC**
6. **FAIRFAX HOLDING COMPANY LLC**
7. **EATON PLACE TIC 1 LLC**
8. **BRYAN HILLS BEST LIVING, LLC**
9. **BARCELONA BEST LIVING, LLC**
10. **A-V VILLAGE CREEK OWNER, LLC**
11. **OKC3 INVESTORS LLC**
12. **ONE ETON TIC 1 LLC**
13. **REMINGTON RANCH'S BEST LIVING LLC**
14. **RIDGE BEST LIVING INVESTORS LLC**
15. **RIDGE BEST LIVING, LLC**
16. **RIVER WALK BEST LIVING, LLC**
17. **SPRINGDALE VILLAGE TIC 1 LLC**
18. **SPRINGDALE VILLAGE TIC 2, LLC**
19. **SPRINGDALE VILLAGE TIC 3, LLC**
20. **SPRINGDALE VILLAGE'S BEST LIVING, LLC**
21. **SUMMER OAKS BEST LIVING LLC**
22. **TUSCANY VILLAGE BEST LIVING LLC**
23. **VESTA-SEMINOLE RIDGE LLC**
24. **VILLAS AT MIDTOWN BEST LIVING LLC**
25. **W.M. BEST LIVING OWNER, LLC**
26. **W.O. SOLE MEMBER LLC**
27. **WOODLAND OAKS BEST LIVING LLC**

By serving them:

**c/o The Corporation Trust Company**
**Corporation Trust Center**
**1209 Orange St**
**Wilmington, DE 19801**

Pursuant to 6 Del. C. § 18-105

SERVICE TO BE COMPLETED BY–

§ 18-105. Service of process on domestic limited liability companies and protected series or registered series thereof.

(a) Service of legal process upon any domestic limited liability company or any protected series or registered series thereof shall be made by delivering a copy personally to any manager of the limited liability company in the State of Delaware, or the registered agent of the limited liability company in the State of Delaware, or by leaving it at the dwelling house or usual place of abode in the State of Delaware of any such manager or registered agent (if the registered agent be an individual), or at the registered office or other place of business of the limited liability company in the State of Delaware. If service of legal process is made upon the registered agent of the limited liability company in the State of Delaware on behalf of any such protected series or registered series, such process shall include the name of the limited liability company and the name of such protected series or registered series. If the registered agent be a corporation, service of process upon it as such may be made by serving, in the State of Delaware, a copy thereof on the president, vice-president, secretary, assistant secretary or any director of the corporate registered agent. Service by copy left at the dwelling house or usual place of abode of a manager or registered agent, or at the registered office or other place of business of the limited liability company in the State of Delaware, to be effective, must be delivered thereat at least 6 days before the return date of the process, and in the presence of an adult person, and the officer serving the process shall distinctly state the manner of service in the officer's return thereto. Process returnable forthwith must be delivered personally to the manager or registered agent.

(b) In case the officer whose duty it is to serve legal process cannot by due diligence serve the process in any manner provided for by subsection (a) of this section, it shall be lawful to serve the process against the limited liability company or any protected series or registered series thereof upon the Secretary of State, and such service shall be as effectual for all intents and purposes as if made in any of the ways provided for in subsection (a) of this section. If service of legal process is made upon the Secretary of State on behalf of any such protected series or registered series, such process shall include the name of the limited liability company and the name of such protected series or registered series. Process may be served upon the Secretary of State under this subsection by means of electronic transmission but only as prescribed by the Secretary of State. The Secretary of State is authorized to issue such rules and regulations with respect to such service as the Secretary of State deems necessary or appropriate. In the event that service is effected through the Secretary of State in accordance with this subsection, the Secretary of State shall forthwith notify the limited liability company by letter, directed to the limited liability company at its address as it appears on the records relating to such limited liability company on file with the Secretary of State or, if no such address appears, at its last registered office. Such letter shall be sent by a mail or courier service that includes a record of mailing or deposit with the courier and a record of delivery evidenced by the signature of the recipient. Such letter shall enclose a copy of the process and any other papers served on the Secretary of State pursuant to this subsection. It shall be the duty of the plaintiff in the event of such service to serve process and any other papers in duplicate, to notify the Secretary of State that service is being effected pursuant to this subsection, and to pay the Secretary of State the sum of $50 for the use of the State of Delaware, which sum shall be taxed as part of the costs in the proceeding if the plaintiff shall prevail therein. The Secretary of State shall maintain an alphabetical record of any such service setting forth the name of the plaintiff and defendant, the title, docket number and nature of the proceeding in which process has been served upon the Secretary, the fact that service has been effected pursuant to this subsection, the return date thereof, and the day and hour when the service was made. The Secretary of State shall not be required to retain such information for a period longer than 5 years from the Secretary's receipt of the service of process.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC,<br><br>Plaintiffs,<br>v.<br><br>YSA INVESTMENTS 1, LLC,<br><br>Defendant.<br><br>YSA INVESTMENTS 1, LLC,<br><br>Counterclaimant and Third- Party Plaintiff,<br>v.<br><br>MARC KULICK, VESTA HOLDINGS LLC, BARTLESVILLE BEST LIVING, LLC; SHORELINE'S BEST LIVING, LLC; SPRINGDALE VILLAGE TIC 1 LLC; SPRINGDALE VILLAGE TIC 2, LLC; SPRINGDALE VILLAGE TIC 3, LLC; SPRINGDALE VILLAGE'S BEST LIVING, LLC; A-V 23 EAST OWNERS, LLC; A-V CLASSEN OWNER, LLC; A-V VILLAGE CREEK OWNER, LLC; AUERBACHVESTA, LLC; BARCELONA BEST LIVING, LLC; BRYAN HILLS BEST LIVING, LLC; EATON PLACE TIC 1 LLC; FAIRFAX HOLDING COMPANY, LLC; LAKESIDE BEST LIVING LLC; LOFTS AT NORTH PENN BEST LIVING LLC; MONTGOMERY APARTMENT HOLDINGS, LLC; MONTGOMERY BEST LIVING, LLC; MUNTAGE BEST LIVING LLC; NAE CANOPY APARTMENTS, LLC; OKC3 INVESTORS LLC; ONE ETON TIC 1 LLC; REMINGTON RANCH BEST LIVING LLC; RIDGE BEST LIVING INVESTORS LLC; RIDGE BEST LIVING, LLC; RIVER WALK BEST LIVING, LLC; RIVERPARK BEST LIVING, LLC; SUMMER OAKS BEST LIVING LLC; TUSCANY VILLAGE BEST LIVING LLC; VESTA-SEMINOLE RIDGE LLC; VILLAS AT MIDTOWN BEST LIVING LLC; W.M. BEST LIVING OWNER, LLC; W.O. SOLE MEMBER LLC; WOODLAND OAKS BEST LIVING LLC; JENKS BEST LIVING LLC; | Case No. 2025-1319-KSJM |

LOUIS INVESTMENTS LLC; LS APARTMENT SPONSOR LLC; RIVER WALK SPONSOR LLC; RIVERPARK BEST LIVING INVESTORS, LLC; SEMINOLE RIDGE APARTMENTS HOLDINGS LLC; SEMINOLE RIDGE SPONSOR LLC; TUSCANY VILLAGE SPONSOR LLC; VESTA HOLDINGS, LLC; 206 QUEEN ANNE CLUB LLC; B&J WOODSCAPE / OKLAHOMA CITY, LLC; AND COPPERFIELD APARTMENTS, LP, and related entities, identified presently as DOES 1-100 and ROES 1-100,

Counterdefendants and Third-Party Defendants

AFFIDAVIT OF SERVICE

STATE OF DELAWARE }
} ss.
COUNTY OF NEW CASTLE }

I, Eric Chrisco, of Parcels, Inc., the State of Delaware, County of New Castle, being duly sworn, says that on the 2nd day of June, 2026 at 2:50 p.m., I personally served a SUMMONS and YSA INVESTMENT LLC'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO VERIFIED AMENDED COMPLAINT AND VERIFIED COUNTERCLAIMS AND THIRD-PARTY COMPLAINT with supporting documents on:

1. **MUNTAGE BEST LIVING, LLC**
2. **MONTGOMERY APARTMENTS HOLDINGS, LLC**
3. **MONTGOMERY BEST LIVING, LLC**
4. **LOFTS AT NORTH PENN BEST LIVING LLC**
5. **LAKESIDE BEST LIVING LLC**
6. **FAIRFAX HOLDING COMPANY LLC**
7. **EATON PLACE TIC 1 LLC**
8. **BRYAN HILLS BEST LIVING, LLC**
9. **BARCELONA BEST LIVING, LLC**
10. **A-V VILLAGE CREEK OWNER, LLC**
11. **OKC3 INVESTORS LLC**
12. **ONE ETON TIC 1 LLC**
13. **REMINGTON RANCH'S BEST LIVING LLC**
14. **RIDGE BEST LIVING INVESTORS LLC**
15. **RIDGE BEST LIVING, LLC**

**16. RIVER WALK BEST LIVING, LLC**
**17. SPRINGDALE VILLAGE TIC 1 LLC**
**18. SPRINGDALE VILLAGE TIC 2, LLC**
**19. SPRINGDALE VILLAGE TIC 3, LLC**
**20. SPRINGDALE VILLAGE'S BEST LIVING, LLC**
**21. SUMMER OAKS BEST LIVING LLC**
**22. TUSCANY VILLAGE BEST LIVING LLC**
**23. VESTA-SEMINOLE RIDGE LLC**
**24. VILLAS AT MIDTOWN BEST LIVING LLC**
**25. W.M. BEST LIVING OWNER, LLC**
**26. W.O. SOLE MEMBER LLC**
**27. WOODLAND OAKS BEST LIVING LLC**

by serving the registered agent, The Corporation Trust Company at 1209 Orange Street Wilmington, DE 19801.

Name of individual accepting service: April Ransburg – Intake Specialist.
Description of individual: African American Female, 25-35 yrs. old, 160lbs., 5'7" with black hair.

____________________
Eric Chrisco

Subscribed and sworn before me
This 2nd day of June, 2026
Notary Public

____________________

My commission expires: __________

ZAHID HOSSAIN NAWAZ
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires August 25, 2026

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

MARC KULICK, VESTA HOLDINGS, LLC, and ASSET HOLDER, LLC,

Plaintiffs,

v.

YSA INVESTMENTS 1, LLC,

Defendant.

YSA INVESTMENTS 1, LLC,

Counterclaimant and Third- Party Plaintiff,

v.

MARC KULICK, VESTA HOLDINGS LLC, BARTLESVILLE BEST LIVING, LLC; SHORELINE'S BEST LIVING, LLC; SPRINGDALE VILLAGE TIC 1 LLC; SPRINGDALE VILLAGE TIC 2, LLC; SPRINGDALE VILLAGE TIC 3, LLC; SPRINGDALE VILLAGE'S BEST LIVING, LLC; A-V 23 EAST OWNERS, LLC; A-V CLASSEN OWNER, LLC; A-V VILLAGE CREEK OWNER, LLC; AUERBACHVESTA, LLC; BARCELONA BEST LIVING, LLC; BRYAN HILLS BEST LIVING, LLC; EATON PLACE TIC 1 LLC; FAIRFAX HOLDING COMPANY, LLC; LAKESIDE BEST LIVING LLC; LOFTS AT NORTH PENN BEST LIVING LLC; MONTGOMERY APARTMENT HOLDINGS, LLC; MONTGOMERY BEST LIVING, LLC; MUNTAGE BEST LIVING LLC; NAE CANOPY APARTMENTS, LLC; OKC3 INVESTORS LLC; ONE ETON TIC 1 LLC; REMINGTON RANCH BEST LIVING LLC; RIDGE BEST LIVING INVESTORS LLC; RIDGE BEST LIVING, LLC; RIVER WALK BEST LIVING, LLC; RIVERPARK BEST LIVING, LLC; SUMMER OAKS BEST LIVING LLC; TUSCANY VILLAGE BEST LIVING LLC; VESTA-SEMINOLE RIDGE LLC; VILLAS AT MIDTOWN BEST LIVING LLC; W.M. BEST LIVING OWNER, LLC; W.O. SOLE MEMBER LLC; WOODLAND OAKS BEST LIVING LLC; JENKS BEST LIVING LLC;

Case No. 2025-1319-KSJM

ELECTRONICALLY FILED
2026 Jun 08 AM 9:49
CLERK OF THE SEDGWICK COUNTY DISTRICT COURT
CASE NUMBER: SG-2026-CV-001216
PII COMPLIANT

**IN THE EIGHTEENTH JUDICIAL DISTRICT**
**DISTRICT COURT OF SEDGWICK COUNTY, KANSAS**
**CIVIL DIVISION**

| | | |
|---|---|---|
| RIVER WALK BEST LIVING LLC, a Delaware limited liability company | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. SG-2026-CV-1216 |
| YSA INVESTMENTS 1, LLC, a Delaware Limited liability company, | ) | |
| Defendant. | ) | |
| Proceeding under K.S.A. Chapter 60 | ) | |

# EXHIBIT 4

EFiled: Jun 04 2026 09:20AM EDT
Transaction ID 79645181
Case No. N25C-10-309 MSJM

EFiled: May 19 2026 04:57PM EDT
Transaction ID 79509499
Case No. N25C-10-309 MSJM

IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| YSA INVESTMENTS 1, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N25C-10-309-KSJM |
| v. | ) | |
| | ) | **PURSUANT TO** |
| MARC KULIC, et al., | ) | **10 Del. C. Sec. 18-105** |
| | ) | |
| Defendants. | ) | |

**SUMMONS**

**THE STATE OF DELAWARE**
**TO THE SHERIFF OF NEW CASTLE COUNTY**
**YOU ARE COMMANDED:**

To summon the above-named defendant, RIVER WALK BEST LIVING, LLC Corporation Trust Center 1209 Orange St, Wilmington, DE 19801 ("Defendant") so that, within 20 days after service hereof upon Defendant, exclusive of the day of service, Defendant shall serve upon Sarah R. Martin, Esq., of the law firm Greenberg Traurig, LLP, Plaintiff's attorneys, whose address is 222 Delaware Avenue, Suite 1600, Wilmington, DE 19081, an answer to the amended complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon Defendant a copy hereof and of the amended complaint (and of the affidavit of demand if any has been filed by Plaintiffs).

Dated: 6-4-26

Colleen Redmond
**Colleen Redmond Prothonotary**

**Per Deputy**

**TO THE ABOVE-NAMED DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above an answer to the amended complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demand in the complaint (or in the affidavit of demand, if any).

**Colleen Redmond Prothonotary**

**Per Deputy**

SUPERIOR COURT STATE OF DELAWARE